FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 26, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) NO. 1:18-CR-2011-LRS |
| Plaintiff, | ) |
| | ) |
| v. | ) **ORDER DENYING** |
| | ) **MOTIONS TO DISMISS,** |
| | ) *INTER ALIA* |
| JESUS LANDEROS-MORALES, | ) |
| a/k/a David Walle-Lopez, | ) |
| Defendant. | ) |

**BEFORE THE COURT** is the Defendant's (First) Motion To Dismiss (ECF No. 22), Motion To Compel Discovery (ECF No. 29), and (Second) Motion To Dismiss (ECF No. 37). These motions were heard with oral argument at the pre-trial conference held on April 22, 2019.

## I. BACKGROUND

On April 4, 2019, this court issued its Order Re Motion To Dismiss (ECF No. 38) regarding Defendant's (First) Motion To Dismiss (ECF No. 22). This court found that by virtue of the March 9, 1993 Order To Show Cause, the immigration court was properly vested with jurisdiction at the March 16, 1993 initial hearing and at the March 30, 1993 removal hearing. Furthermore, this court found Defendant was provided an adequate opportunity to retain counsel prior to the March 30, 1993 hearing. This court also found, however, that the immigration

**ORDER DENYING**
**MOTIONS TO DISMISS-** 1

judge erred in advising Defendant he was ineligible for §212(c) relief. Defendant was sentenced in 1988 on his drug trafficking conviction, before enactment of the Immigration Act of 1990, and that statute did not apply retroactively to bar Defendant from seeking §212(c) relief. This is a due process violation, but Defendant must still establish he suffered prejudice in that it is "plausible" he would have been granted such relief by the immigration court.

Defendant's Motion To Compel (ECF No. 29) and the Defendant's (Second) Motion To Dismiss (ECF No. 37) pertain to his efforts to obtain audio recordings of the March 16 and March 30, 1993 hearings. The Government has not filed formal responses to either motion. It filed a status report (ECF No. 36) indicating it was unable to locate the recordings. It further contends the recordings contain nothing material to disposition of Defendant's motions to dismiss.

## II. DISCUSSION

To show he was prejudiced, Defendant has the burden of demonstrating it is plausible he would have been granted § 212(c) relief. *United States v. Rojas-Pedroza*, 716 F.3d at 1253, 1263 (9th Cir. 2013). Determining plausibility is a two-step process. *Id*. First, the court must identify the factors relevant to the exercise of discretion for the relief being sought. *Id*. Second, it is necessary to determine whether in light of the factors relevant to the form of relief being sought, and based on the unique circumstances of the Defendant's case, it is plausible the agency official considering the Defendant's case would have granted relief from removal. *Id*. While Defendant cannot succeed by merely showing a theoretical possibility of relief, he need not prove relief was probable. *U.S. v. Raya-Vaca*, 771 F.3d 1195, 1207 (9th Cir. 2014). He need not show that he definitely would have received relief and need only establish some evidentiary

**ORDER DENYING MOTIONS TO DISMISS-            2**

basis on which relief could have been granted. *Id*.

### A. Absence Of Audio Recordings

During oral argument, Defendant's counsel suggested that in determining the plausibility of Defendant being granted §212(c) relief, this court is restricted to considering what information the immigration judge had before him at the 1993 hearings which cannot be conclusively established because of the absence of audio recordings. Defendant cites no authority for that proposition and this court has found none. The court agrees with the Government that it needs to ascertain what positive and negative equities existed in 1993, regardless of what the immigration judge knew or considered in terms of those equities, if indeed he considered them at all since he erroneously determined Defendant was ineligible for §212(c) relief. The absence of audio recordings of the March 1993 hearings does not preclude Defendant from attempting to persuade that it is plausible he would have been granted relief, and it does not preclude the court from making an informed assessment of the equities existing at the time based on other evidentiary sources.

In *U.S. v. Medina*, 236 F.3d 1028 (9th Cir. 2001), the defendant appealed the denial of his motion to dismiss the indictment charging him with being an illegal alien found in the United States following deportation. Defendant contended the indictment should have been dismissed because the audiotape from his prior deportation proceeding was blank. He argued the absence of a tape or transcript required dismissal because the Government could not prove the element of deportation and his due process rights were violated because he was unable to collaterally attack the prior deportation proceeding. The Ninth Circuit affirmed the district court's denial of the motion to dismiss.

The Ninth Circuit noted that while the Government has the burden of proving the element of a prior deportation, the lawfulness of the prior deportation

**ORDER DENYING**
**MOTIONS TO DISMISS-        3**

is not an element of an offense under 8 U.S.C. §1326(a). 236 F.3d at 1030. With regard to the element of prior deportation, the Government merely needs to prove a deportation proceeding actually occurred with the result of the defendant being deported. *Id*. at 1031. The Government can do this by relying on a deportation order or a warrant without need of a tape or transcript of the prior deportation proceeding. *Id*.

Of course, a defendant charged under §1326 can preclude the Government from relying on a prior deportation if the deportation proceeding was so procedurally flawed that it effectively eliminated the alien's right to obtain judicial review. *Id*. In order to collaterally attack the prior deportation, the defendant must show the prior deportation hearing was fundamentally unfair and that he was prejudiced by the error. *Id*. In *Medina*, the Ninth Circuit rejected the defendant's argument that the mere absence of a tape recording or transcript of his deportation proceeding satisfied the fundamental unfairness requirement. *Id*. It found the defendant was not deprived of any procedural right during the deportation proceeding, nor was he deprived of the right of appeal because of the absence of a tape or transcript. *Id*. While the absence of a tape recording or transcript alters the nature of judicial review, it does not effectively eliminate the right to obtain judicial review. *Id*. at 1032. In *Medina*, other means were available for the defendant to challenge the validity of his prior deportation proceeding such as his own memory, witnesses, and the information in his INS file. *Id*. Therefore, the defendant was not deprived of his due process rights because of the absence of a tape recording of his prior deportation proceeding. *Id*.

In the case at bar, Defendant Landeros-Morales, using the information in his INS file, was able to establish the immigration judge at the March 30, 1993 removal hearing erroneously found Defendant was ineligible for §212(c) relief and therefore, that his due process rights were violated.

**ORDER DENYING MOTIONS TO DISMISS-**       **4**

In *Medina*, the Ninth Circuit further found the defendant failed to offer any evidence or argument that he was prejudiced and noted it was clearly his burden to prove prejudice. 236 F.3d at 1032. Medina offered only a vague assertion that if a tape recording were available, he might be able to locate some defect in the proceeding. *Id*. This, however, was no more than speculation and he failed to set forth any plausible argument or factual basis that would support his position. *Id*. Therefore, the record did not establish prejudice. *Id*.

Defendant Landeros-Morales contends the Government's failure to produce the recordings of his removal hearings prevents him from making a showing it is plausible he would have been granted §212(c) relief and therefore, that he was prejudiced by the immigration judge finding him ineligible for such relief. Because the immigration judge informed Defendant he was not eligible for §212(c) relief, it seems highly unlikely there would have been any discussion at either of the March 1993 hearings regarding positive and negative equities pertaining to whether such relief should be granted. Of course, without the recordings, it cannot be declared a certainty there was no such discussion, but even assuming there was such discussion, this court fails to see how it might impact its determination of plausibility. Like the defendant in *Medina*, Defendant Landeros-Morales offers only vague assertions that if the recordings were available, he might be able to locate defects in the removal proceedings such as additional due process violations. Were the court to find Defendant's assertions sufficient to warrant dismissal of the indictment, it seems that in every instance where recordings are not available, dismissal would be warranted.

As in *Medina*, other means were available to Defendant to challenge the validity of his prior deportation proceeding, including his own memory, witnesses, and the information in his INS file. Defendant has employed these other means. In his effort to establish plausibility he would have been granted §212(c) relief,

**ORDER DENYING MOTIONS TO DISMISS-**   5

Defendant has filed a declaration (ECF No. 40-1) setting forth what he asserts are the positive equities in his favor. In his declaration, he also discusses certain things about his March 1993 hearings such as him not having a lawyer at either hearing, not recalling if the immigration judge asked him if he wanted voluntary departure or explaining that option, and not recalling if the immigration judge asked him he wanted to apply for cancellation of removal under §212(c) or explaining how he could apply for it.[1] Defendant says that had he known he was eligible for §212(c) relief and been given the opportunity to apply for it, he would have informed the immigration judge of the positive equities in his favor and why he should receive such relief. This suggests there was no discussion of the balancing of equities at the March 1993 hearings. Defendant does not say in his declaration to what extent his immigration and criminal history was discussed at the March 1993 hearings. In his declaration, he does not challenge any aspect of his immigration and criminal history, although he has used his INS file to question whether he is Trinidad Mendoza-Sanchez deported on December 12, 1974, or Armando-Guzman Paz who was deported on June 6, 1975.

The absence of audio recordings of the March 1993 hearings does not independently warrant dismissal of the indictment. It does not prevent Defendant from attempting to discharge his burden of establishing it is plausible he would have received §212(c) relief had he not been erroneously advised he was ineligible for such relief.[2]

---

[1] Defendant makes no argument that he was eligible for voluntary departure and if eligible, that it was plausible he would have received such discretionary relief. In 1993, voluntary departure was provided for in 8 U.S.C. §1254(e).

[2] Defendant contends the audio recordings would definitively establish

**ORDER DENYING MOTIONS TO DISMISS-  6**

## B. Plausibility Of Relief

When §212(c) relief was available, the Bureau of Immigration Appeals (BIA) enumerated several factors to be considered in determining whether or not to grant such relief. Favorable considerations included: 1) family ties within the United States; 2) residence of a long duration in this country (particularly when residence began at a young age); 3) hardship to the petitioner or petitioner's family if relief was not granted; 4) service in the U.S. armed forces; 5) a history of employment; 6) the existence of business or property ties; 7) evidence of value and service to the community; 8) proof of rehabilitation if a criminal record existed; and 9) other evidence attesting to good character. Weighed against these factors were the following: 1) the nature and underlying circumstances of the exclusion or deportation ground at issue; 2) additional violations of the immigration laws; 3) the existence, seriousness, and recency of any criminal record; and 4) other evidence of bad character or the undesirability of the applicant as a permanent resident. *Yepes-Prado v. U.S. I.N.S.*, 10 F.3d 1363, 1366 (9th Cir. 1993). An immigration judge was required to 'determine whether to grant relief based on all the facts and circumstances of a particular case, taking into account the social and humane considerations presented in an applicant's favor and balancing them against the adverse factors that evidence the applicant's

---

whether he "received any advance written notice of his hearing prior to March 16, 1993" and would establish if at that hearing, he requested a continuance to obtain counsel. The court's legal rulings in its "Order Re Motion To Dismiss" regarding vesting of jurisdiction and adequate opportunity to retain counsel render these contentions moot. (ECF No. 38 at pp. 3-11).

**ORDER DENYING MOTIONS TO DISMISS-** 7

undesirability as a permanent resident." *Id.* at 1365-66.[3]

---

[3] Defendant cites to an unpublished 2009 decision from Judge Shea, *U.S. v. Sanchez*, 2009 WL 5170182 (E.D. Wash. 2009). The immigration judge in that case determined the defendant was eligible to apply for §212(c) relief given his years of continued residency in the United States, but that the Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996 applied and therefore, defendant could not obtain relief from deportation. Judge Shea found the immigration judge impermissibly applied the AEDPA to defendant and that his due process rights were violated when the immigration judge retroactively applied AEDPA's restrictive §212(c) to him. Judge Shea found there was prejudice to the defendant given the immigration judge's finding that defendant was eligible to apply for §212(c) relief prior to the "recent" amendment resulting from passage of the AEDPA and therefore, it was unnecessary to balance the positive and negative equities relating to the defendant's claim for discretionary relief from deportation.

The immigration judge in Defendant Landero-Morales' case never determined he was eligible to apply for §212(c) relief. Furthermore, in the nine plus years since Judge Shea's decision, it has not been cited by any other court for the proposition that a court can forego balancing the positive and negative equities

**ORDER DENYING MOTIONS TO DISMISS-         8**

The BIA required a showing of outstanding equities by applicants for discretionary relief who were convicted of serious drug offenses, particularly trafficking. Outstanding equities were also to be demonstrated where the applicant's record reflected a pattern of serious criminal activity. *Ayala-Chavez v. U.S. I.N.S.*, 944 F.2d 638, 641 (9th Cir. 1991). This heightened standard applies in Defendant's case as he was convicted in 1988 of one count of Conspiracy to Distribute a Controlled Substance (Cocaine), one count of Possession With Intent To Deliver Cocaine, and sentenced to eight years in prison on each count with the sentences to run concurrently.

Defendant came to the U.S. when he was 11 years old to join his parents in California who were already here as legal permanent residents. Defendant became a legal permanent resident in 1968. Defendant lived with his parents and his two-half brothers who were also legal permanent residents and who he believes became naturalized citizens prior to 1988. Defendant has an aunt and uncle in California who were also legal permanent residents and with whom he maintained a relationship. Defendant has a maternal half-sister who is a legal permanent resident living in California and who, like Defendant's half-brothers, has children who are U.S. citizens. Defendant has three children from a relationship with a woman who is naturalized U.S. citizen. The children are U.S. citizens. Defendant

---

to determine whether a defendant is prejudiced and conclude prejudice exists from the mere fact an immigration judge erroneously advised a defendant he could not obtain relief from deportation.

**ORDER DENYING**
**MOTIONS TO DISMISS-            9**

says the only family member he has in Mexico is a full-blood brother who has lived almost his entire life in Mexico. Defendant says he never returned to Mexico until he was deported following his 1988 drug trafficking conviction.

At some point, Defendant moved to Washington for employment purposes, leaving his partner and his children in California. Defendant says he visited them in California and they would visit him in Washington, and that he supported them financially. Defendant maintains he consistently worked or sought employment while living in both California and Washington up until his arrest in 1987 so that he could financially support his partner, his children, and his parents.

According to Defendant, he attended Catholic Church every week in both California and Washington. Defendant says that while in prison for his 1988 federal drug conviction, he was not involved in any altercations and did not receive any disciplinary infractions.

In August of 1987, Defendant was arrested after which a search of the vehicle he was driving turned up a white plastic grocery bag containing approximately one kilogram of cocaine and a chrome plated .357 caliber revolver. In March 1988, Defendant was convicted of Conspiracy To Distribute Cocaine and Possession With Intent To Deliver Cocaine. (ECF No. 19 at p. 10). There is information that while in the custody of Bureau of Prisons, Defendant was charged with assault and disruptive conduct, but was found incompetent and not responsible for his conduct following a mental health evaluation. (*Id*. at 11).

Defendant notes that relief has been found plausible where defendants were convicted of drug offenses, including distribution offenses. With one exception, however, the cases cited by Defendant involved possession offenses. (ECF No. 40 at p. 8, n. 8). The exception is *In Re Catalina Arreguin De Rodriguez*, 21 I & N Dec. 38 (1995), in which the BIA found the individual met her burden of demonstrating relief under §212(c) was warranted where her only conviction was

**ORDER DENYING
MOTIONS TO DISMISS-               10**

for importation of marijuana (78.45 kilograms of marijuana was found in a camper shell of a pickup she was driving across the U.S.-Mexico border), the sentencing court noted her acceptance of responsibility and "minor" role in the offense, there was substantial evidence of efforts toward rehabilitation, and she presented unusual or outstanding equities, including nearly 20 years of lawful residence and two minor dependent U.S. citizen children.

Defendant Landeros-Morales went to trial and was convicted of drug trafficking in 1988. He did not accept responsibility and made the Government prove its case. There is no indication that the sentencing court considered Defendant's role to be "minor," and this seems a very unlikely possibility considering his conviction for conspiracy. Furthermore, Defendant did not have nearly 20 years of lawful residence in the United States prior to his 1988 conviction.

Defendant points out there are documents in his INS file which raise legitimate questions whether he could have been Trinidad Mendoza-Sanchez who was deported to Mexico in December 1974, and whether he could have been Armando-Guzman Paz who was deported to Mexico in June 1975. (ECF Nos. 22-1, 22-2 and 22-3). The Post Pre-Trial Services Report filed in the captioned matter, however, indicates that in August 1975, Defendant, using the name "David Walle-Lopez," was charged with Alien Smuggling and deported to Mexico. (ECF No. 19 at p. 3). "David Walle-Lopez" is the name Defendant used during proceedings in Yakima County Superior Court in December 2018 which resulted in his conviction for Fourth Degree Assault. (*Id*. at p. 13). It is also the "aka" name on the indictment filed in the captioned matter and is the name which Defendant used to sign his Acknowledgment Of Notice Of Rights, Assertion of Fifth and Sixth Amendment Rights, and two speedy trial waivers (ECF Nos. 10, 11, 17 and 31), and the name he used to sign his declaration (ECF No. 40-1)

**ORDER DENYING MOTIONS TO DISMISS-**     **11**

setting forth the positive equities which he asserts establish it is plausible he would have been granted §212(c) relief. In Paragraph 1 of his declaration, Defendant says he is Jesus Landeros-Morales, the person named as the Defendant in the case, yet he nevertheless signed the declaration as "David Walle-Lopez."

The use of the name "David Walle-Lopez" in 1975 and currently is strong evidence that Defendant, using a variety of aliases between 1975 and 1987, is the individual responsible for the immigration and criminal violations set forth in the Post Pre-Trial Services Report[4], including illegal transportation of an alien (twice in 1981), alien smuggling (1981), illegal entry (1982), reentry after deportation (1984), and escape (1984). (ECF No. 19, pp. 5-8).[5]

Defendant has not shown outstanding or unusual equities outweighing the nature and underlying circumstances of his 1988 drug trafficking conviction. He has not met the heightened standard required of him. Considering the 1988 drug trafficking conviction alone, it is not plausible Defendant would have received §212(c) relief. When Defendant's immigration and criminal history from 1975 to 1988 is also considered, it is even clearer it is not plausible he would have

---

[4] The Government represents the information contained in the Post Pre-Trial Services Report is from criminal databases utilizing Defendant's "FBI Number," a unique identification number assigned to each individual who has a record in the FBI's Integrated Automated Fingerprint Identification System.

[5] It is noted that the name "Trinidad Mendoza-Sanchez" was used in connection with the 1982 illegal entry, 1984 reentry after deportation, and 1984 escape charges/convictions.

**ORDER DENYING MOTIONS TO DISMISS-**          12

received such relief.

### III. CONCLUSION

Defendant's Motions To Dismiss (ECF Nos. 22 and 37) are **DENIED**. Defendant's Motion To Compel Discovery (ECF No. 29) was granted previously, although not formally. That motion is **GRANTED** formally now, *nunc pro tunc*, although as set forth above, the Government is unable to locate the audio recordings of the March 1993 hearings.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this order and provide copies to counsel.

**DATED** this ___26th___ day of April, 2019.

*s/Lonny R. Suko*
_____
LONNY R. SUKO
Senior United States District Judge

ORDER DENYING
MOTIONS TO DISMISS- 13